IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

**THINK RUBIX, LLC**                                                                                          **PLAINTIFF**

VS.                                                 4:21-CV-00004-BRW

**BE WOKE.VOTE,** *ET AL.*                                                                              **DEFENDANTS**

## ORDER

Pending is Defendants' Motion to Dismiss for Lack of Personal Jurisdiction (Doc. No. 7). Plaintiff has responded and Defendants have replied.[1] The motion is DENIED. Because specific, personal jurisdiction is lacking in Arkansas, this case is TRANSFERRED to the Eastern District of California, Sacramento Division.[2]

### I.    BACKGROUND

Plaintiff is a consultant firm that assists groups that engage in "systems of change to transform culture."[3] In August 2017, Plaintiff began using the "WOKE VOTE" mark as part its services.[4] Plaintiff owns a registered trademark, "WOKE VOTE."[5] Plaintiff displays the "WOKE VOTE" mark through its website, social media platforms, and at various in-person

---

[1] Doc. Nos. 9, 10.

[2] In general, when a district court lacks personal jurisdiction over a defendant, it may transfer the case "to any district or division in which it could have been brought" if doing so would "be in the interest of justice." See 28 U.S.C. § 1406(a); *Goldlawr, Inc. v. Helman*, 369 U.S. 463, 466 (1962) ("The language of § 1406(a) is amply broad enough to authorize the transfer of cases, however wrong the plaintiff may have been in filing [its] case as to venue, whether the court in which it was filed had personal jurisdiction over the defendants or not."). Here, the Eastern District of California appears to be the appropriate venue.

[3] Doc. No. 1, p. 5.

[4] *Id.*

[5] *Id.* at 5-6.

events.[6] Defendants[7] participate in "an initiative aimed to encourage participation and inspiration of younger generations . . . to create discussions about politics through social media initiatives and in-person events."[8] They use the phrase "BE WOKE.VOTE" as part of their activities.

Plaintiff asserts that Defendants use of "BE WOKE.VOTE" is trademark infringement. It contends Defendants collectively own and operate a website and social media pages that feature this infringing mark. Plaintiff asserts that Defendants "solicit donations, offer products for sale, and advertise for political engagement, and the Defendants intended to reach prospective donors and voters in the state of Arkansas."[9]

On January 4, 2021, Plaintiff filed its Complaint alleging trademark infringement under the Latham Act,[10] trademark dilution under 15 U.S.C. § 1125(c), unfair competition under 15 §

---

[6] *Id.* at 6.

[7] *Id.* at 1-3.  BeWoke.Vote, LLC (a California limited liability company with its principal place of business in California), CLIMB Organization, LLC (a California limited liability company with its principal place of business in California), Be Woke, LLC (a California limited liability company with its principal place of business in Florida), AONE Entertainment, LLC (a Florida limited liability company with its principal place of business in Florida), Hyper Engine, LLC (a California limited liability company with its principal place of business in California), Hidden Empire Film Group LP (a California limited partnership with its principal place of business in California), KHRodgers, LLC (a California limited liability company with its principal place of business in California, Deon Taylor (an individual domiciled in California), Roxanne Taylor (an individual domiciled in California), Robert F. Smith (an individual domiciled in California), and Darrick Angelone (an individual domiciled in the state of Florida) (collectively "Defendants").

[8] *Id.* at 7.

[9] *Id.* at 12-18.

[10] 15 U.S.C. § 1114.

U.S.C. 1125(a), trademark infringement under Arkansas common law, and unfair competition under Arkansas common law.[11]

On February 18, 2021, Defendants filed their Motion to Dismiss for Lack of Jurisdiction.[12] Defendants contend that the Complaint's allegations, affidavits, and supporting exhibits are insufficient to establish personal jurisdiction. I agree.

## II.   APPLICABLE LAW

A federal court may exercise personal jurisdiction over Defendants if Plaintiff has properly served them with process under the forum state's long-arm statute and if Defendants have sufficient contacts with Arkansas to satisfy procedural due process.[13] Defendants have not challenged service of process. Arkansas's long-arm statute is coextensive with the limits of due process; therefore, the only question is whether due process requirements are met in this case.[14]

Personal jurisdiction is established by a showing that Defendants maintain sufficient minimum contacts with Arkansas "such that summoning the defendant would not offend traditional notions of fair play and substantial justice."[15] The central question is whether Defendants purposefully availed themselves of the privilege of conducting activities in Arkansas

---

[11]Doc. No. 1, pp. 19-25.

[12]Doc. No. 7.

[13]See *Dever v. Hentzen Coatings, Inc.*, 380 F.3d 1070, 1072-73 (8th Cir. 2004) (examining claims based on diversity jurisdiction); *Enter. Rent-A-Car Co. v. U-Haul Int'', Inc.*, 327 F. Supp. 2d 1032, 1036 (E.D. Mo. 2004) (citing *Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co., Ltd.*, 484 U.S. 97, 104–05 (1987); *Bird v. Parsons*, 289 F.3d 865, 871 (6th Cir. 2002)) (examining federal claims).

[14]*Dever*, 380 F.3d at 1073; *Davis v. St. John's Health Sys., Inc.*, 71 S.W.3d 55, 58 (Ark. 2002).

[15]*Dever*, 380 F.3d at 1073.

and should reasonably anticipate being haled into court here.[16] "Specific jurisdiction can only be found if the controversy is 'related to' or 'arises out of' 'the [D]efendants' contacts with the forum state.'"[17] Plaintiff only argues specific personal jurisdiction in this case.

"When personal jurisdiction is challenged by a defendant, the plaintiff bears the burden to show that jurisdiction exists."[18] "To successfully survive a motion to dismiss challenging personal jurisdiction, a plaintiff must make a prima facie showing of personal jurisdiction over the challenging defendant."[19] A prima facie showing requires Plaintiff to plead facts sufficient "to support a reasonable inference that the defendant can be subjected to jurisdiction within the state."[20] When, as here, "the district court does not hold a hearing and instead relies on pleadings and affidavits, . . . the court must look at the facts in the light most favorable to the [Plaintiff], and resolve all factual conflicts in favor of [Plaintiff]."[21]

### III.   DISCUSSION

The personal jurisdiction arguments in this case concern whether the Complaint's allegations, supporting affidavits, and other evidentiary materials "make a prima facie showing of personal jurisdiction."[22] Plaintiff contends that because this case concerns infringement based

---

[16] *Id.*

[17] *Johnson v. Woodcock*, 444 F.3d 953, 956 (8th Cir. 2006) (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984)).

[18] *Fastpath, Inc. v. Arbela Techs. Corp.*, 760 F.3d 816, 820 (8th Cir. 2014) (citations omitted).

[19] *Id.* (citations omitted).

[20] *K-V Pharm. Co. v. J. Uriach & CIA, S.A.*, 648 F.3d 588, 591–92 (8th Cir. 2011) (citation and alteration omitted).

[21] *Pangaea, Inc. v. Flying Burrito LLC*, 647 F.3d 741, 745 (8th Cir. 2011).

[22] *Fastpath, Inc.*, 760 F.3d at 820.

on an intangible product–the promotion of political involvement–it requires an "atypical" personal jurisdiction analysis.[23]  I disagree .  The case Plaintiff relies on, *Acumen Brands, Inc. v. NHS, Inc.*, was "atypical" because it involved a declaratory judgment decision  and considered trademark enforcement activities in the minimum contacts analysis.[24]  The procedural posture and factual circumstances are different here.  Therefore, I will use the traditional tests for personal jurisdiction.

### A. Five Factor Test

The Eighth Circuit has instructed courts to weigh five factors when assessing minimum contacts: "(1) the nature and quality of contacts with the forum state; (2) the quantity of such contacts; (3) the relation of the cause of action to the contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) convenience of the parties."[25]  The first three factors are of "primary importance," and the third factor "speaks to the particular question of specific jurisdiction."[26]  The fourth and fifth factors "carry less weight and are not dispositive."[27]

Defendants' alleged contacts with Arkansas occurred through the internet.[28]  The test laid out in *Zippo Manufacturing Co. v. Zippo Dot Com, Inc.*[29] is instructive when considering the

---

[23] Doc. No 9, p. 14.

[24] *Acumen Brands, Inc. v. NHS, Inc.*, No. 5:16-CV-05284, 2017 WL 1330212, at *3 (W.D. Ark. Apr. 6, 2017).

[25] *Whaley v. Esebag*, 946 F.3d 447, 452 (8th Cir. 2020) (citation omitted).

[26] *Id.* (citation omitted).

[27] *Id.* (citation omitted).

[28] Doc. Nos. 7-1, 7-2, 7-3, 7-4, 7-5, 7-6, 7-7, 7-8, 7-9, 7-10.  All Defendants filed affidavits asserting that they had no physical contact with Arkansas.  Only one Defendant has ever been to Arkansas, which was several years ago on an unrelated trip.

[29] *Zippo Manufacturing Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119 (W.D. Pa. 1997).

nature, quality, and quantity of contacts over the internet.[30]  In *Zippo*, the court "created a 'sliding scale' to measure the likelihood of personal jurisdiction [that] runs from active contract formation and repeated transmission of computer files to mere posting of information on a website."[31]  It  described the test as follows:

> At one end of the spectrum are situations where a defendant clearly does business over the Internet. If the defendant enters into contracts with residents of a foreign jurisdiction that involve the knowing and repeated transmission of computer files over the Internet, personal jurisdiction is proper. At the opposite end are situations where a defendant has simply posted information on an Internet Web site which is accessible to users in foreign jurisdictions. A passive Web site that does little more than make information available to those who are interested in it is not grounds for the exercise [of] personal jurisdiction. The middle ground is occupied by interactive Web sites where a user can exchange information with the host computer. In these cases, the exercise of jurisdiction is determined by examining the level of interactivity and commercial nature of the exchange of information that occurs on the Web site.[32]

Plaintiff presents exhibits compiled from Defendants BEWOKE.VOTE social media pages on FaceBook and Instagram and the bewoke.vote.com website.[33]  Plaintiff's exhibits and accompanying declaration provide series of social media posts and website pages that list states with the corresponding voter registration deadlines.[34]  Arkansas was included on the list among numerous other states.  The bewoke.vote.com website also contains a link to voter registration page that allows voters fill out voter registration and absentee ballot forms.[35]

---

[30]See *Johnson*, 614 F.3d at 796.

[31]*Id.*

[32]*Zippo*, 952 F. Supp. 1119, 1124 (W.D. Pa.1997) (citations omitted).

[33]Doc. Nos. 9-1, 9-2.

[34]*Id.*

[35]Doc. No. 9-2, pp. 9-10.

Defendants' internet activities fall into the middle-ground described by in *Zippo*: the internet interactions are more than passive, but do not rise to the level of facilitating business transactions. Defendants communicate with individuals in foreign jurisdictions, but there is no indication they entered into contracts or exchanged electronic files with Arkansas residents.

The only indication that Defendants purposefully directed their social medial presence at Arkansas is the reference to "#Arkansas" in the lists of states . However, Arkansas was only one of many states listed.  Plaintiff failed to point to any post that was expressly directed to only Arkansas voters.  Plaintiff cites two California cases[36] to support its contention that the"#" symbol shows express targeting to Arkansas.[37]  Those cases are not persuasive.  In one, the court pointed out that a hashtag symbol could be used as a directional device, but not part of a trademark.[38]  In the other, the court used a series of location specific hashtags as part of its analysis, but required more substantial in-state contacts (promotional appearances, musical performances, and release parties) to actually find personal jurisdiction.[39]  No similar contacts exist here.  Defendants provided affidavits asserting no Arkansas resident accessed the social media pages or website in question, used the site to register to vote, or made any donation.  Plaintiff does not dispute these facts.  There is no evidence that the alleged infringement itself actually extended into Arkansas.  Accordingly, I decline to find personal jurisdiction based on only the possibility of a contact with Arkansas.

---

[36]*Eksouzian v. Albanese*, No. CV 13-00728-PSG-MAN, 2015 WL 4720478, at 8 (C.D. Cal. Aug. 7, 2015); *Brophy v. Almanzar*, No. SACV1701885CJCJPRX, 2019 WL 10837404, at 5 (C.D. Cal. Aug. 22, 2019).

[37]Doc. No. 9, pp. 7-8.

[38]*Eksouzian*, 2015 WL 4720478 at 8.

[39]*Brophy v. Almanzar*, 2019 WL 10837404 at 5.

Even assuming Arkansans were among those that viewed the social media posts and interacted with the voter registration links, viewing social media posts is a common activity. With a FaceBook or Instagram account, viewing posts takes little more than the roll of mouse and click of a button. Using a form provided to facilitate voter registration is more interactive, but is, at most, a conduit through which the user can access the state's voter registrar.

Additionally, given the lack of directed advertising specifically to Arkansas and the fact Defendants' social media posts and the website are equally available to everyone, it is unlikely that Arkansans make up more than a small fraction of their total contacts. Because Defendants' contacts with Arkansas are minimal in number and common in nature, the link between Plaintiff's cause of action (trademark infringement) and Defendants' contacts in Arkansas is tenuous at best.

Neither of the final two factors is dispositive. Arkansas does have an interest in providing a forum for resident companies. However, California also has an interest in preventing copyright infringement by entities and individuals domiciled there. Defendants had little reason to expect being haled into court in Arkansas.

## B.  Calder Effects Test

When the cause of action involves a tortious act, as in the case of trademark infringement,[40] a plaintiff can also obtain specific jurisdiction over a nonresident defendant by "employing the *Calder* effects test,"[41] which states,

> a defendant's tortious acts can serve as a source of personal jurisdiction only where the plaintiff makes a prima facie showing that the defendant's acts (1) were intentional, (2) were uniquely or expressly aimed at the forum state, and (3) caused

---

[40]*Dakota Indus., Inc. v. Dakota Sportswear, Inc.*, 946 F.2d 1384, 1388 (8th Cir. 1991).

[41]*Johnson v. Arden*, 614 F.3d 785, 796 (8th Cir. 2010) (citing *Calder v. Jones*, 465 U.S. 783 (1984)).

8

      harm, the brunt of which was suffered—and which the defendant knew was likely to be suffered—[in the forum state].[42]

However, the Eighth Circuit has interpreted the *Calder* effects test more narrowly than other circuits,[43] stating, "this test allows the assertion of personal jurisdiction over non-resident defendants whose acts are performed for the very purpose of having their consequences felt in the forum state."[44]  The Eighth Circuit says the *Calder* test is "merely as an additional factor to consider when evaluating a defendant's relevant contacts with the forum state . . . absent additional contacts, mere effects in the forum state are insufficient to confer personal jurisdiction."[45]

      The Eighth Circuit has held that the injury in trademark infringement cases occurs in the state where the trademark owner has its principal place of business.[46]  Here, Plaintiff's principal place of business is Arkansas.[47]  However, successful application of the *Calder* effects test requires more contacts beyond the effect of the injury.  The fact that Plaintiff's injury occurred in Arkansas because it maintains its principal place of business there is not enough.  While Plaintiff did contact Defendants in an effort to resolve the matter before litigation commenced,[48] Plaintiff has not shown that Defendants were aware of their trademark prior to its contacting them, much

---

[42]*Id.*

[43]See *Haisten v. Grass Valley Medical Reimbursement*, 784 F.2d 1392, 1397 (9th Cir.1986) (jurisdiction may be proper when defendant's only contact with the forum state is the "purposeful direction" of a foreign act having effect in that state); *Hugel v. McNell*, 886 F.2d 1, 5 (1st Cir.1989) (requirement of purposeful contact or substantial connection satisfied when intentional tortfeasor knew that major impact of the injury would be felt in the forum state).

[44]*Id.* (quoting *Dakota Indus., Inc. v. Dakota Sportswear, Inc.*, 946 F.2d at 1387).

[45]*Id.* at 796–97.

[46]*Dakota*, 946 F.2d at 1388–89.

[47]Doc. No. 1, p.1.

[48]Doc. No. 9-3.

9

less that they knowingly and intentionally caused Plaintiff's injury in Arkansas. Further, Plaintiff has failed to show Defendants' actions were specifically aimed at Arkansas (see above).

Additionally, the Eighth Circuit considers *Calder* simply an additional factor in the minimum contacts analysis, and explicitly states that absent minimum contacts, mere effects in the forum state are not enough to confer personal jurisdiction.[49] Plaintiff has not made the requisite showing under *Calder*, and even if Plaintiff had done so, Defendants' contacts with Arkansas are still not of the type and quantity that would support the exercise of personal jurisdiction.

Accordingly, Defendants do not have sufficient minimum contacts with the state of Arkansas so that exercising specific personal jurisdiction over Defendants would comport with the requirements of due process and traditional notions of fair play and substantial justice.

### C.  Jurisdictional Discovery

Plaintiff requests jurisdictional discovery in a footnote at the end of its Response to Defendants' Motion to Dismiss. However, Plaintiff does not explain what the discovery would reveal and in light of all the aforementioned facts, I do not find it necessary.

### CONCLUSION

Based on the above findings of fact and conclusions of law, Defendant's Motion to Dismiss for Lack of Personal Jurisdiction (Doc. No. 7) is DENIED. However, the Clerk of the Court is directed to immediately TRANSFER this case to the Eastern District of California, Sacramento Division.

IT IS SO ORDERED this 25th day of March, 2021.

Billy Roy Wilson<br>
UNITED STATES DISTRICT JUDGE

---

[49] *Johnson v. Arden*, 614 F.3d at 796-97.